No. 4160

Second Circuit

(Second Division)

BAYER v. WHITLEY

(January 14, 1932. Opinion and Decree.)

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, attorneys for plaintiff, appellee.

J. Fair Hardin and Ben E. Coleman, of Shreveport, attorneys for defendant, appellant.

CULPEPPER, J. Plaintiff brought this action to recover damages sustained to his automobile in the sum of $214, resulting from a collision with defendant's automobile at the intersection of Rook street with Centenary boulevard, in the city of Shreveport, which collision and resultant damages plaintiff alleges was due solely to the neg-

ligence of defendant's minor son who was driving her said car at the time, and for which plaintiff alleges defendant is liable.

Defendant answered admitting her son was driving her car at the time, but denied any negligence on his part, and avers that plaintiff was wholly at fault, and she reconvenes for recovery of damages to her car caused by the accident, which she alleges amounted to $92.65. Defendant pleads in the alternative that should the court find that her son was negligent, plaintiff's contributory negligence bars his recovery.

There was judgment in favor of plaintiff for the full amount demanded, and defendant has appealed.

The collision in question involves the making of a left-hand turn by plaintiff across the line of traffic of one of the right of way thoroughfares of the city and in front of defendant's automobile, which was approaching facing plaintiff.

On the occasion of the accident, plaintiff was traveling south on Centenary boulevard en route to his bakery establishment located about one block east of the boulevard on Rook street, which extended from the east and intersected said boulevard at right angles. Plaintiff testified that when he got "almost even with" the intersection "and started to put out" his left hand to make a left turn into Rook street, he heard the horn of another car approaching from the rear and he "pulled over to the right hand enough for him (the other car) to pass and went ahead," then he kept going into Rook street. In explanation of how he made the turn, plaintiff testified (quoting):

"As I turned, I saw the other car I imagine about a hundred or hundred and twen-ty-five feet away and on turning, I put out my hand, made a slow turn on Rook Street, I was about to get in the street, the other car hit mine, about, I say eight feet from the front of my car."

Later in his testimony he places defendant's car at about 100 feet from him at the time he "proceeded to turn," according to measurement. He also states that the car was coming at the rate of 45 or 50 miles per hour, and that he was going between 10 and 12 miles per hour when he turned into Rook. Says he made a short turn. Asked what prevented him from getting across into Rook street in time to avoid the accident if he was making 10 to 12 miles per hour, and the defendant's car at the time was 125 feet away, plaintiff merely replied, "Car hit me is what kept me from going ahead."

J. A. Crockett, sales manager for plaintiff, testified he was on Rook street about 50 feet distant from the scene at the time, coming toward the intersection, and saw the collision; that defendant's car was coming at a speed of about 40 or 45 miles per hour when it hit plaintiff's car; that defendant's car was 125 feet or more away when plaintiff started turning into Rook street, as near as he could estimate the distance.

S. M. Edgar, an employee of plaintiff at the bakery, testified that he had just driven up in his car from the bakery and had stopped on Rook street about 20 feet from the intersection to wait for plaintiff to make the turn so he could pass out into the boulevard, and that he saw the accident. He states there was another car coming up pretty close behind plaintiff, "and when he (plaintiff) drove up and stopped, with his hand out to turn, then this other car blew its horn and Mr. Bayer pulled to

the side until this car got by—and Mr. Bayer then, when the car passed, turned into Rook Street," holding his hand out; that plaintiff then pulled his car into the curb on the boulevard to his right for the other car to pass, then made the turn into Rook. street. Witness states that plaintiff made "just an ordinary turn" and "was moving at a slow speed." In another statement he places the speed at "possibly ten or fifteen miles an hour." Asked where defendant's car was when plaintiff "pulled into Rook or turned," witness answered, "Some hundred feet I guess from Rook." Asked how fast it was going, he replied, "I figure forty or forty-five miles," and "when he got or was some ten feet of Mr. Bayer's car then he tried to slow up."

W. A. Whitley, defendant's son, who was driving her car, testifying for defendant, states that when he first saw plaintiff's car, plaintiff "was almost to his (plaintiff's) right-hand curb letting this other car pass," plaintiff's car being at the time about "ten feet from Rook Street." Asked to state just what happened, witness answered as follows:

"Well,· I was about twenty-five feet when I—I think this car in front of me was about thirty or forty feet, Mr. Bayer cut to his left to go into Rook Street, after the car coming toward me had passed, and I just went around the end of this ·car, the car preceding me, and I thought he waited for that car to ɱass, thought would wait for me too, I went over toward the right as· far as I could when saw him drive up and block the street—I attempted to cut to my left and the right fender of my car * * * was at an angle when it hit Mr. Bayer's car."

This witness is positive that there was another car just ahead of him going in the same direction. He says he was 30 or 40 feet behind it when it reached the intersection and was permitted by plaintiff to pass before plaintiff turned in. Jack Watts, one of the young men in the car with Whitley, testified also at first that there was another car 30 or 40 feet ahead of the Whitley car leading it. On cross-examination, however, he admitted that there was a car following behind plaintiff's car about which plaintiff's witnesses had testified, and that it was the car he had in mind. Yet, when asked later by plaintiff's counsel to state what Whitley did, this witness answered:

"He swerved to the side and went over about ten feet I should say looked like Mr. Bayer was going to wait for us to pass, the car in front he let it pass and Mr. Whitley went on, Mr. Bayer went in front of us, and Mr. Whitley tried to swerve and go round to the back but was not hardly room to pass there and Mr. Bayer's car was moving two or three miles an hour, therefore he hit him."

A. W. Roos, who was also riding in the Whitley car, on the front seat, testified that he did not remember seeing any other car leading the Whitley car. His testimony regarding the car which passed ɱlaintiff going south was substantially as related by Whitley. He places the distance the Whitley car was from the intersection when plaintiff began slowing down to make the turn into Rook at 80 to 90 feet and was going at about 30 miles per hour. He also says plaintiff's car was moving very slowly, just barely moving as he turned into Rook.

It is in evidence that young Whitley admitted to plaintiff right after the accident that he was going too fast and had misjudged the relative speed of the two cars.

It is admitted that Centenary boulevard is a right of way street, and that the speed

limit thereon for motor vehicles is 23 miles per hour. The speed of defendant's car was obviously in excess of the lawful rate. Whitley saw plaintiff holding out his hand and slowing down, knew it was at the intersection of Rook street, and knew, or should have known, that plaintiff was likely intending to turn into that street; yet he made no effort to slacken his speed or bring his car under control until within about 10 feet of plaintiff and was then too late to avoid a collision. The fact that he saw another car passing plaintiff just ahead of him, or one coming close up behind plaintiff and passing plaintiff, either or both, he certainly should have known that it only increased the danger of a collision if he continued advancing. If he thought plaintiff intended to stop long enough to let him pass before turning in, such a thought, under the circumstances, was fraught with too much uncertainty as to warrant him in proceeding at the rate he was going, especially so, if he was as close to plaintiff as he says he was. We think he was guilty of negligence.

We are unable, however, to agree with the learned trial judge in his conclusion that plaintiff was not at fault. Defendant had the right of way to begin with. Plaintiff was making a left turn across the line of traffic, on a much traveled right of way city thoroughfare, which called for unusual care and alertness on his part, greater than that called for by defendant. He should have been sure of his ability to clear the path of defendant's rapidly approaching car instead of merely holding out his hand and moving leisurely across and taking chances on negotiating the turn before defendant's car reached him or slowing down so he could cross.

If defendant's car was as far as 100 feet distant when plaintiff turned, and plaintiff was going 10 to 15 miles per hour and defendant at 45 to 50, it was indeed a hazardous move when he turned deliberately in front of it at such a slow speed. The bulk of plaintiff's car was yet in the street at the time it was struck. A reasonable view is that the defendant's car, as Whitley and his witness state, was much nearer than plaintiff claims it was. Whitley places it at 80 to 90 feet and his witness Jack Watts testified it was within 30 or 40 feet to Rook street, then plus the width of Rook, making it around 80 in all, at the time plaintiff started to make the turn. Plaintiff must have looked ahead when he first held out his hand to make the turn. If he did, he doubtless saw defendant's car, as he states he saw no other car in front of it. Notwithstanding plaintiff says he saw defendant's car 100 to 125 feet away as he turned, it would seem the more probable that he saw the car that distance when he first held out his hand. Then during the time that intervened while he was pulling in to the curb and letting the car at his rear pass him, defendant's car covered part of the distance and was closer up at the moment he started to turn. Be that as it may, plaintiff evidently made a grave error in judging distances and/or the speed of defendant's car as compared with that of his own. A man of his age and doubtless driving experience should have known better than to deliberately drive in front of a car and let it strike him before he had gotten his car half clear of the street. It seems that the only precaution he took was to hold out his hand. He apparently did not continue to watch the car, nor did he endeavor to speed up to get out of the way. Yet the car ran right upon him while the bulk of his car was still in the street, notwithstanding the driver of defendant's car threw on the brakes at 10 feet away,

which doubtless retarded the speed to some extent.

In the recent case of Payne v. Prestridge, reported in 16 La. App. 479, 133 So. 512, 513, this court held through Judge McGregor as the organ of the court, that—

"It must be admitted that the most dangerous movement on public streets or highways is the left hand turn. Particularly is this true when the street on which this turn is attempted is a right of way street."

The court, speaking further regarding a driver of a motor vehicle holding out his hand as a signal, said:

"He must not be content with holding out his hand and suppose that all see it. He must look both ways and be sure he is safe before he undertakes to go ahead."

In the case of Lewis v. Gulf Refining Co. of La., 7 La. App. 499, this court, through Judge Odom as its organ, uses the following language in discussing the left-hand turn by drivers of motor vehicles:

"Under all the rules and practices, aside from any statutory regulations, the driver of a motor vehicle on a much traveled street * * * who desires to make a left turn across the street, must be particularly careful and on the alert for cars meeting or overtaking his, and must not make such turn until he is sure the way is open. It is a particularly dangerous and hazardous move to make, and he must use the greatest precaution."

We think it manifest from the evidence that plaintiff failed to use the particular care and extraordinary amount of precaution that was necessarily required of him to use under the circumstances as shown in this case, and as a result of which, his negligence in not doing so contributed in a large measure to the accident.

While he was slowed down or stopped and his car was pulled out near the curb to let the car behind him pass, he would have been delayed but a few moments longer in letting defendant's car pass. The driver of defendant's car testified he thought that was what plaintiff was going to do. It is what he should have done, and is what anyone using ordinary care and prudence would have done under the circumstances.

The trial judge did not hand down a written opinion and we do not know his reasons for exonerating plaintiff. Counsel for defendant stated in oral argument and in brief that while he did not hear the oral reasons given by the judge he had been informed that the judge gave as his reasons that the defendant's car had the last clear chance to avoid the accident and for that reason defendant alone should be held liable. If such be true, we agree with the learned counsel in his able and exhaustive brief that the doctrine of the last clear chance does not apply to this case for the reason that plaintiff's negligence was a continuing one, extending right up to the moment of the accident, and was concurrent with that of defendant. He made no apparent effort to speed up his car or to blow his horn or to do anything whatever when he saw or should have seen that danger was imminent. It is not shown that he kept his eye on the approaching car, but apparently proceeded across the street leisurely as though the driver had seen his outstretched hand and would stop or slow down.

For the reasons assigned the judgment appealed from is annulled and set aside, and there is now judgment rejecting the demands of plaintiff, also rejecting defendant's reconventional demand, plaintiff to pay costs of both courts.